Good morning, Your Honors. May it please the Court, Christy Hughes from Federal Defenders on behalf of Mr. Cruz, I'll attempt to reserve four minutes for rebuttal. Mr. Cruz is serving a 10-year mandatory minimum sentence that no one thought he deserved. The district court had to impose this sentence after Mr. Cruz was convicted by a jury that was never instructed that he had to know he was not a minor. You know, can you do this, speak a little slower, keep your voice up? Yes. Is this better? I had to really bring the microphone down. Talk to us. Yeah, okay. The district court also had to impose this sentence after it erroneously concluded that Mr. Cruz's placement at Camp Barrett as a juvenile scored as a guideline sentence of imprisonment. I would ask this Court to vacate Mr. Cruz's conviction in light of the instructional error, or in the alternative, vacate his sentence and remand for resentencing. Regarding the instructional error, the instructions were constitutionally deficient because they did not require the jury to find that Mr. Cruz knew he was smuggling methamphetamine. And, in fact, they instructed exactly the opposite. What is your best circuit court case, any circuit, including the Ninth, preferably the Ninth, that helps your case, that knowledge of the drug type is a substantive element that has to be proven? Well, there isn't one, Your Honor. I mean, this is a new issue. Post-Aleen, the government has argued this is just a rehash of old arguments, but I think that's just incorrect. So no circuit has gone there post-Aleen? Correct. Some circuits have gone the other way. Correct, Your Honor. Aleen really changed the analysis. Previously, this was a sentencing factor or it was a material fact. Aleen goes further and says, no, this is an element of the aggravated offense. And a number of things flow from that finding that it's an element. And some of those this Court was already or courts in this circuit were already doing, charging the indictment, proving it to the jury, finding it beyond a reasonable doubt. But one thing that no courts were doing was applying the statutory presumption that the knowingly mens rea has to be read into all of the elements of the offense. And so that issue is novel for this Court. And post-Aleen, its analysis of this Court has to go through. The Carranza line of cases that the government relies on just never went through that analysis. They rely on an old 1984 case, Lopez-Martinez, in which this Court said, drug type is only relevant to the penalty. It's not an element of the offense because the offense is simply importing a controlled substance. It's not importing methamphetamine, heroin, et cetera. And so we only put the drug type in the indictment to let the defendant know how much time he's facing. But it's not an element. And so that whole line of cases never treated drug type as an element. And therefore, it never engaged in the statutory presumption analysis that drug type has to have the mens rea of knowingly read into it. Well, let's take the analysis of the one case that has gone there, post-Aleen, and that's the Sixth Circuit case of Dado or Dado. Where is the error in the majority's analysis that mens rea is not an element? Your Honor, I apologize. I don't have it right in front of me. But I think the error is that the Court didn't go through all of the factors that the Supreme Court has said are relevant and way in favor of a finding that mens rea applies to all of the elements. And so the harsh penalty of 10 years, which demonstrates that this is really culpable, very culpable conduct. And we want to make sure that people subject to this harsh penalty know that they are committing the core of the culpable conduct that Congress has found. According with ordinary English grammar, as the Supreme Court said in Flores Figueroa and Liparata, the Court gives this example of you knowingly eat a sandwich with cheese. That means you know you're eating a sandwich and you know it has cheese in it. And the same thing applies here, that you knowingly import methamphetamine means not just that you're importing methamphetamine, means not that you're just importing something, but that you're also knowing that you are importing methamphetamine. And I think those are really the factors that are important. The government also points out here that this is in a different subsection, and so these cases don't apply, which I think is just incorrect as well. Excitement video and most recently in Barrage, the Supreme Court went through and applied the mens rea to elements that appeared in different subsections. Well, let me ask you this. You're going to talk about whether the prosecutor committed legionnaire-kill misconduct during rebuttal by telling the jury to do the right thing. What's your position on that? That that was, that was plenary, Your Honor. He stated to the jury that the jury should do the right thing and find him guilty. And that was an improper appeal to the jury to convict on a motion rather than facts. You know, I wish you'd talk slower. I apologize. The younger generation today, they don't talk very, very fast. Just think about Abraham Lincoln getting up at Gettysburg. Think Foursquare. Seven years ago, our fathers bought this car for a new nation. You know, thank you. It's only 242 words. So, you know, it's you listen to President Obama. He doesn't talk fast, does he? You listen to communicators on television. Sometimes they talk a little too fast. But you admit something, I think, in communication when you talk fast. But, you know, today, the young people, they talk fast while they text fast and all that. So you're used to it. But I'm not. And so be kind to an old person and talk slower. I will endeavor to speak more slowly, Your Honor. The prosecutor's rebuttal closing argument was an improper appeal to the jury to convict on a motion rather than facts. And this was similar to the closing argument in Weatherspoon, where the prosecutor improperly told the jury that convicting the defendant would make them, quote, feel comfortable because it would take a convicted felon off the street. And it's similar here. The prosecutor was telling the jury he didn't reference the facts, he didn't reference the evidence. He was saying that finding them guilty, finding Mr. Cruz guilty would be doing the right thing. In other words, do the morally right thing, do what I think is correct, and find him guilty. And this was improper. Well, he didn't tie that argument in to the evidence and argue the persuasive force of the evidence that time. And he's there representing the federal government. And this is the last thing that the jury heard before they deliberated. And it was an argument that was not made. And the prosecutor made his opening argument, kind of saved it for the end. Well, he made a similar one where he did reference finding him guilty and doing the right thing, but in his initial closing, but in that initial closing, he didn't reference the evidence and reference the law. And so he prefaced it by saying, I don't have the exact quote in front of me, Your Honor, but he references the law and the evidence. He did not do that on his rebuttal closing. And Your Honor is exactly correct. This was the last thing the jury heard. There was no curative instruction given. And so the jury's left thinking, likely, you know, we don't even have to sort out all the evidence. The prosecutor's telling us his impression that Mr. Cruz is guilty. And the prosecutor's telling us that we should go on our emotion and do what feels right and find him guilty. Instead of ---- Kagan? I think that the hard thing about your argument is it's plane or review. And it's got to affect the substantial rights, given that he admitted he knew he was smuggling narcotics across the border.  opening? prejudice to him. Well, he only admitted that he was ---- Wasn't the evidence pretty overwhelming? Only of the marijuana, Your Honor. I think it was pretty undisputed that he didn't know about the methamphetamine. And on the video, in fact, you can tell he's very surprised when the agents tell him that there's methamphetamine in the car. And so if this Court finds that he had to know that he was smuggling methamphetamine, then it definitely affected his substantial rights, because there just wasn't ---- it was totally circumstantial evidence. Well, he acknowledged right at the spot about the marijuana. Correct. He admitted that. He said he was getting paid to smuggle the marijuana. It's jack-in-the-box. The people that he was interacting with before that asked him to smuggle were marijuana smugglers. He knew that. But he knew nothing about the methamphetamine. I'd like to turn to the juvenile commitment to Camp Barrett just quickly, Your Honor. The district court found, based partly on a picture, which the Court said spoke a thousand words, that this commitment to Camp Barrett for what ended up being four months was a guideline sentence of imprisonment, and therefore the district court had to impose a mandatory minimum. The district court, just as an initial matter, I think it's unlikely that Congress meant that a juvenile four-month placement in which Mr. Cruz took classes and really was supposed to get his life back on track would defeat safety valve and result in a ten-year sentence. But turning to the substance, if Your Honors look at what the district court looked at, the district court just, his reasoning really ignored a number of important factors. First of all, I think it's important that the juvenile court had sentencing options. After the adjudication of guilt for Mr. Cruz, the juvenile court could sentence Mr. Cruz to corrections and sentence him to CYA, which is more like the MCC. Or the district or the juvenile court could do what it did and put him in the custody of probation and sentence him to Camp Barrett, which, according to the website printout that the district court looked at, is a juvenile rehabilitation facility. It's not a safe --- Kennedy, where is it located? Pardon? Where is it located? I believe it's out in Alpine, Your Honor, down sort of --- Well, I looked it up. I know we have one here right up the road in Topanga Canyon. But I looked this one up, and it doesn't say. Camp Barrett is located in a rural community of Alpine, just near Wisconsin. Well, I don't know where that is. It provides a commitment option to juvenile court for seriously delinquent males. It also provides committed wards with training and skills. That's correct, Your Honor. They go to school while they're there. They take courses in behavioral medicine. Where is Alpine? Alpine is kind of southeast San Diego County. Oh, it's southeast. It's part of the area of the county that frequently burns. So you see it on the news a lot. Okay. But I don't know. Is Your Honor looking at the PSR addendum? Because --- No, I'm looking at the -- I mean, you know, I just asked my law clerks. I want to know more about Camp Barrett. So I've got it right here. That website refers to it. I've got a picture of it. It looks nice. Nice trees and everything else. Yes.  And I'm --- Okay. Can I ask you about the other point in this case, the knowledge? I'm very confused. He was charged with two counts. Correct. One was marijuana. One was another substance. Correct. He was instructed on the court instructed on two counts. Correct. One was the marijuana, and one was the meth. In both, apparently, it's the jury was told it doesn't --- in each, the jury was told it doesn't matter that he knew what it was as long as he knew it was a prohibited substance. Correct. Didn't he have to -- didn't the jury have to find that he was carrying two different kinds of substances in that? I don't think so, Your Honor. And I think that we made that argument in our briefs that this resulted in a directed verdict because it was undisputed that he knew he was smuggling marijuana. And so once the district court says --- But he had to know in count two that in the other count that it was a --- A controlled substance. And there was no instruction that he had to know it was a separate controlled substance than the marijuana that the jury found in count one. Because I think because the law of the circuit --- I don't know how there would be two counts, really. Okay. It's very confusing to me. You're creating that argument based on LNA. Correct, Your Honor. The finding from the Supreme Court that this is now an element of the aggravated offense. I'll reserve the remainder of my time, unless the Court has further. All right. Thank you. May it please the Court, Jared Hotz on behalf of the Appellee of the United States. I'll start on the Allene issue and address Judge Schroeder's question. There were two counts in this case. The factual difference for the two counts is the controlled substance that was, in fact, being imported by the defendant. Count one pertained to the fact that he, in fact, imported marijuana. Count two, he, in fact, imported methamphetamine. The mens rea requirement in both counts is simply that he knew he was importing some controlled substance. And that is the pre-Allene case law. And for the reasons I'll get into, that remains the law as to mens rea under sections 952 and 960. Allene raises the bar of proof for certain facts if they pertain to the statutory penalty range. So previous facts that had to be proven by a preponderance of the evidence with the sentencing judge, the bar is now raised such that they need to be proven beyond a reasonable doubt to a jury. Allene does not take facts that were not relevant to sentencing, statutory sentencing at all, and make them elements such that they need to be proven beyond a reasonable doubt. And you'll need to look at the structure of section 960 to see why that's the case here. Section 960A provides that it's unlawful to import a controlled substance knowingly. Section 960B sets forth the schedule of statutory penalties that apply upon a violation of section 960A. And section 960B says, in the case of a violation of subsection A of this section involving 500 grams or more of a mixture containing methamphetamine, the penalty shall be, in this case, 10 years to life. In none of the cases that the appellant cites hold otherwise, these are cases out of different criminal contexts. And in those cases, there's no inherently culpable conduct unless the court read a mens rea requirement where it didn't specifically exist before. And the appellant cited Burrage or Barrage. There was no dispute in that case that that case involved heroin. So to read into the Supreme Court's simple statement of the elements in that case that somehow a knowledge of the heroin was required, that's simply just not a holding of the Burrage case. Because there was no dispute that it was heroin, the Supreme Court was simply using shorthand to say, in this case, because we all know it's heroin, you need to have knowingly imported heroin. I think the court can easily read or some other controlled substance into that statement in Burrage. I can now turn to the prosecutor's closing argument. Let me ask you this question. The Attorney General, on August the 12th, 2013, last year, said that he was not sure that he had issued his memorandum on department policy on changing mandatory minimum sentences and recidivist enhancement in certain drug cases. Are you acquainted with that? Yes, Your Honor. Why shouldn't this help us defend that? Well, what we colloquially refer to as the Holder memo came out after this case was charged and after the defendant was sentenced. So I think I recognize, Your Honors, perhaps frustration about the charging decision in this case. No, I'm not frustrated. I'm just asking questions. At the time that this case was charged, there was a charge that the defendant was not charged with mandatory minimum in a case of this nature. Did the prosecutor argue to the jury that it only had to find that he knew about marijuana? The prosecutor's closing argument covers both. He says, he focuses on the fact that the defendant admitted that he knew he was importing marijuana. I believe at one point in the closing, he does also say something to the effect of he knew he was importing marijuana, he knew he was importing methamphetamine, and he knew it was a payday, something to that effect. I'm assuming that you weren't the prosecutor below? No, Your Honor. It's never a good idea to say, do the right thing, is it, for a prosecutor during a closing argument. Well, if I were on the spot. It's dangerous ground to tread when a prosecutor does that. If I were on the spot, I would try not to say that. However, I don't think it's error, and I certainly don't think it's plain error. You don't think it's error? I would argue no, Your Honor. He did not invoke his own personal belief. He did not invoke the power or prestige of the government or the United States. Yeah, but he's there. That's who he is. He is, Your Honor. He's the power and the prestige and the majesty of the United States. So the appellant's argument focuses on the statement. Why did you say that? He didn't explicitly use the words I or we or the government believes or the United States believes. But when you say do the right thing, that's the province of the jury, right? It appeals to their emotions and passions as to what the right thing may be. The appellant's argument focuses on the way it was stated in the rebuttal summation. I think it needs to be looked at in conjunction with what the prosecutor said in his main closing. No, no. You have to look at it in rebuttal. You have to look at it in rebuttal. And that's the last thing the jury heard. It is, Your Honor. Now, I mean, why didn't he bring that argument up sooner? I think he did. He said in his main closing, this is a quote from the main closing, it's about money and that's it. And I ask you to do the right thing in this case, looking at the evidence and following the law. Looking at the evidence and following the law. Yes, Your Honor. He didn't say that the second time around. But by using the same language, some of the same language in rebuttal. That's, you know, you're expecting to, you know, you're, you know, he starts out giving his opening argument. And then, you know, things get a little bit heated and all that. He listens to the defense attorney and whatever. No, at the end, that's not what he said. Not what he said. Well, I would argue, Your Honor, that by using some of the same language, he was referring the jury back to his argument that he made in his main closing. Well. And if I could then address plain error. So, there doesn't seem to be a dispute here that Mr. Cruz knew that he was importing a controlled substance. In the reply brief, I think what Mr. Cruz is arguing is that it was not clear that he knew he was importing methamphetamine. And so, under the plain error review, there could be plain error here. So, that argument hinges on the appellant's argument about a lien. And so, if this court were to reject the lien argument that knowledge of methamphetamine is required, he's essentially conceded that there was no dispute based on his confession that was played at the trial that he knew he was importing some controlled substance, which is sufficient to prove count two and its mens rea requirement. Just to address the guideline calculation for purposes of safety valve eligibility, we didn't touch on this, but I think the court is clear that under Loos-A-Raga, now published at 757 F3995, safety valve determinations are properly made by the district court at sentencing by a preponderance of the evidence, and a lien does not require that all safety valve determinations be submitted to a jury for determination beyond a reasonable doubt. And as to the specific facts of the court's determination, which should be reviewed for clear error, there is no dispute that Mr. Cruz was sentenced upon an adjudication of guilt to confinement in Camp Barrett for a period of 270 days, and for which he ultimately served a period of 120 days. The penological policy underlying why he was sentenced to Camp Barrett as opposed to anywhere else is not relevant under the guidelines. The sole consideration is whether the sentence resulted upon an adjudication of guilt, and it did in this case. And in fact, the California Supreme Court has stated categorically in the In re Julian R. case that all juvenile sentences in California are imposed for the purposes of rehabilitation, not for the purpose of punishment. That doesn't mean that juvenile adjudications in California cannot score. And even if that were the case, looking at page 321 of the excerpts of record, the reasons that Mr. Cruz was adjudicated and sent to Camp Barrett in that case included protection of the persons and property of others, and to prevent his risk of flight. If the Court has nothing else, I'll submit. Let me ask you, you're from the San Diego U.S. Attorney's Office, right? Yes, Your Honor. I understand that there's been recent discussions in your office, and I hope additional training on proper scope of arguments, and if you wouldn't mind conveying to the trainers that these type of comments, at least in my view, shouldn't be made by prosecutors in closing, whether it's plain error or not. That's another question, but I don't think it's appropriate for prosecutors to be asking jurors to do the right thing, whether the word I is used or not. I'm happy to convey that, Your Honor. Well, but there were this problem. I'm sorry? There were this problem in San Diego. I am familiar with what Judge Nguyen is referring to. This trial occurred several years ago at this point. Yeah, yeah, yeah. And I think it's, like I said, it's something that I would hopefully, when on the spot, not say, but based on the law, I don't think it is error, and I certainly don't think it's plain error in this case. Well, here, we had one in the Sanchez case where the U.S. attorney argued, and I would ask your consideration, as every jury has done, and that is that after the marshal service has done their duty and the court has done its duty and the lawyers on both sides have done their duty, the jurors do your duty and well consider this matter and find these defendants guilty. That was held to be an improper argument. Do you acquire that one? Yes, Your Honor. Yeah, okay. All right. Thank you very much. Three quick points, Your Honors, about the juvenile commitment. Liz Araga does not affect the juvenile commitment. That was, some of our arguments about safety valve are affected by Liz Araga, but this is just an argument that the juvenile commitment did not score under the guidelines, and so it's not barred by this Court's decision in Liz Araga. It wasn't adjudication of guilt in this case? There was an adjudication of guilt, but what this Court said in Johnson is after the adjudication of guilt, what are the purposes for the confinement, and it's distinguished between different purposes. And here, if Your Honors look at the ER at 311 to 318, the mother says he's out of control, I can't take care of him, he's breaking curfew, he's drinking with his friends. The probation officer notes that the mother does not feel she can discipline him at home and that he needs structure. Those services can be provided by the probation department through Camp Barrett where he will be able to receive rehabilitative services in a controlled, substance-free environment. And the probation officer again goes on to note, this is at ER 313, Mr. Cruz could benefit from schooling, work, readiness, recreational training, and custodial consequences. And so the purposes were not like a certain sentence of imprisonment where we're trying to incapacitate someone. It was for rehabilitation. Thank you, Your Honor. Did you mention this Harris case? Harris v. United States in your original argument? In terms of the elements of the offense argument? Did you mention Harris v. United States? It's a 2002 case in your original argument. In the juvenile commitment argument? Or in the Alleen elements of the offense argument? That argument. I don't believe it's in our briefing. The case that was overruled by Alleen, is that what Your Honor is referring to? No. I'm looking to the Harris case which defined this language, mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an element that must be submitted to the jury. Is that from this circuit or for the Supreme Court? Supreme Court. I did not mention that case, Your Honor, because I thought that was the case that Alleen had abrogated. But I'm not – I don't – if you could give me the site, I could submit a 28-J on it if Your Honor would like that. I just – I don't have it with me. I don't believe that we cited it. Well, that's all right. I'm just – something I stumbled on, I guess. But if it helps us, I would like you to read it. All right. Let's see. Are we all covered now? We'll let this last one. Yeah.
judges: Schroeder, Pregerson, Nguyen